IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0693-WJM-NRN

GREG HERRIG, and
ANGELA HERRIG,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

      Defendant.

---

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION TO DISMISS

---

      Before the Court is Defendant American Family Mutual Insurance Company, S.I.'s Motion to Dismiss ("Motion to Dismiss").  (ECF No. 21.)  Plaintiffs Greg and Angela Herrig filed a response (ECF No. 23), to which Defendant filed a reply (ECF No. 24).  For the reasons explained below, the Motion to Dismiss is granted in part and denied in part.

## I. BACKGROUND[1]

      Defendant issued a homeowners' insurance policy to Plaintiffs, Policy Number 05-BD5652-01 ("Policy"), which provided coverage for their residence from June 8, 2019 to June 8, 2020.  (¶ 7.)  The Policy provides for $457,600 in dwelling coverage

---

[1] The Court assumes the allegations contained in the First Amended Complaint ("FAC") (ECF No. 17) to be true for the purpose of deciding the Motion to Dismiss.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Citations to (¶ __), without more, are references to the FAC.

with a $1,000 deductible and covers damage suffered as the result of windstorms and hailstorms.  (¶ 8.)  On August 22, 2019, Plaintiffs' residence, located at 2817 S. Fig Street, Lakewood, CO 80228 ("Property"), suffered damage as the result of a hailstorm and windstorm.  (¶ 9.)  Plaintiffs allege that they learned of damage to the Property after speaking with neighbors who suffered storm damage and had their roofs replaced.  (¶ 14.)  On or about March 2020, Plaintiffs spoke with David Kuntz of Timberland Exteriors of Colorado on a few occasions to discuss the damage to the Property.  (¶ 16.)  During the conversations, Plaintiffs learned that their roof had been damaged by wind and hail. (*Id.*)

Based on the information learned from Kuntz, Plaintiffs opened an insurance claim with Defendant on or about April 7, 2020, which Defendant designated as Claim Number 01-002-317679 ("Claim").  (¶ 17.)  Soon thereafter, Defendant's adjuster, Steve Weber, inspected the roof of the Property.  (¶ 18.)  On April 20, 2020, Defendant retained Knott Laboratory, LLC ("Knott") and sent Jason Cochran to the Property to complete an inspection.  (¶ 19.)  Two days later, Defendant sent Plaintiffs a letter denying the Claim and stated that the shingles were not damaged by hailstone impacts; Defendant did not address other coverage available under the Policy for damage to the roof.  (¶ 20.)  Plaintiffs allege that Defendant relied on Knott's report in reaching its decision to deny the claim.  (¶ 21.)

On April 24, 2020, Defendant assigned David C. Thompson to serve as a Special Investigation Unit ("SIU") investigator on the Claim.  (¶ 22.)  Greg Herrig spoke with Thompson on April 27, 2020, and May 4, 2020, to discuss the Claim, though Plaintiffs do not detail the contents of those conversations.  (¶ 23.)

On May 7, 2020, Plaintiffs hired Brad Mueller with Bellator Claims Resolution to serve as their public adjuster.  (¶ 24.)  On May 21, 2020, Mueller's initial estimate was $23,443.45.  (¶ 25.)  On May 28, 2020, Mueller notified Defendant that he would be serving as Plaintiffs' public adjuster and provided Defendant with an estimate of the repair and photographs of the damage.  (¶ 26.)  Mueller informed Defendant that the adjuster's scope of loss was inconsistent with the damages identified in his inspection of the Property and that it was also inconsistent with the damage identified in the Knott report.  (¶ 27.)  Mueller noted that the damage would require the roof to be completely removed and replaced.  (*Id.*)

On July 10, 2020, Taylor Pontius of Defendant met with Plaintiffs and Mueller to inspect the property, and during this inspection, Pontius admitted that the Property had suffered damage.  (¶ 28.)

On June 24, 2020, Defendant provided Plaintiffs with a replacement cost estimate in the amount of $1,213.75.  (¶ 29.)  On September 21, 2020, Defendant provided Plaintiffs with a replacement cost estimate in the amount of $10,418.69.  (¶ 30.)  On October 7, 2020, Defendant issued payment to Plaintiffs in the amount of $1,690.66, which is the actual cash value amount of $2,690.66 less the deductible.  (¶ 31.)

On November 13, 2020, Plaintiffs submitted an insurance complaint to the Colorado Department of Regulatory Agencies.  (¶ 32.)  On or about December 22, 2020, Mueller prepared and estimate and determined that the total value of the Claim was $71,285.77, which Mueller provided to Defendant.  (¶ 34.)

On December 22, 2020, Defendant sent Mueller a letter notifying Plaintiffs that it

would not provide insurance coverage based on the information it had received related to a wind and hail claim, but instead it would pay some amount due to alleged vandalism.  (¶ 35.)  However, Defendant failed to provide any revised estimate to Plaintiffs that would address the damage to the Property, either pursuant to hail/wind loss coverage or vandalism coverage.  (*Id.*)  Plaintiffs allege that the estimates offered fail to address the total scope of repairs and also use significantly different unit amounts for the repairs it has agreed to cover.  (*Id.*)

On January 28, 2022, Plaintiffs filed a lawsuit in the District Court for Jefferson County, Colorado.  (ECF No. 3.)  On March 21, 2022, Defendant removed the case pursuant to this Court's diversity jurisdiction.  (ECF No. 1.)  On April 18, 2022, Plaintiffs filed their First Amended Complaint ("FAC"), bringing claims for breach of contract; violation of C.R.S. § 10-3-1115 and 10-3-1116 - statutory unreasonable delay and denial; and common law bad faith.  (ECF No. 17.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk*, 493 F.3d at 1177.  Thus, in ruling on a Motion to

Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements' of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

**A.     Breach of Contract**

Defendants contend that Plaintiffs have failed to plead a claim for breach of contract because they have pled no factual allegations demonstrating that the additional benefits they seek are owed under the Policy. (ECF No. 21 at 10.) Specifically, Defendant complains that Plaintiffs have not pled any factual allegations regarding the differences between their public adjuster's estimates and Defendant's estimate, aside from the total dollar amounts and a vague allegation regarding a difference in unit

counts.  (*Id.*)

Despite Defendant's arguments and the fact that the FAC is not a model pleading, the Court determines that these issues are best left to the summary judgment stage of litigation.  Plaintiffs have pled that they obtained an insurance policy from Defendant, and that Defendant continues to deny coverage and payment in an amount necessary to repair the Property to its condition prior to the August 22, 2019 storm loss. (¶ 36.)  Therefore, the Court denies Defendant's request to dismiss the breach of contract claim.

**B.     Statutory Unreasonable Delay/Denial and Common Law Bad Faith Claims**

To succeed on a statutory unreasonable delay or denial claim, Plaintiffs must prove that the insurer delayed or denied payment of a covered benefit without a reasonable basis.  C.R.S. § 10-3-1115(1)(a), (2).  The standard for reasonableness is the same as for a common law bad faith claim, but a statutory claim does not require the additional element of knowledge or reckless disregard.  CJI:25-4 (Notes on Use no. 5).  "[T]he burden of demonstrating the unreasonableness of the insurer's actions lies with the insured."  *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836–37 (D. Colo. 2016).

In a first-party claim alleging common law bad faith, the insured must prove both that the insurer acted "unreasonably under the circumstances" and that "the insurer either knowingly or recklessly disregarded the validity of the insured's claim."  *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004).

Defendant argues that Plaintiffs have failed to state a claim for bad faith breach of contract or statutory unreasonable delay/denial because they have failed to plausibly allege how Defendant acted unreasonably.  (ECF No. 21 at 5.)

The Court agrees.  Concerning allegations of delay, the Court observes that Plaintiffs opened their Claim with Defendant on April 7, 2020 (¶ 17), and thereafter Defendant's adjuster Weber inspected the roof of the property, and on April 20, 2020, Cochran from Knott completed an inspection (¶ 19).  The allegations of the FAC demonstrate that Plaintiffs and Defendant remained in communication through December 2020.  While Plaintiffs may disagree with the results of Defendant's investigation and their ultimate payment, there are simply no plausible allegations of unreasonable delay in the FAC.

Moreover, there are simply no non-conclusory allegations in the FAC about any unreasonable or bad faith conduct by Defendant.  *See Villa Maison Homeowners Ass'n, Inc. v. Owners Ins. Co.*, 2018 WL 11182673, at *3 (D. Colo. July 9, 2018) (granting motion to dismiss claims of statutory delay/denial and common law bad faith).  Here, Plaintiffs allege that their public adjuster presented at least two estimates—$23,443 and $71,285.77 and that Defendant denied the bulk of those costs to repair the roof.  However, Plaintiffs never specifically allege any facts showing that Defendant's actions were unreasonable or how they were unreasonable; rather, their allegations of unreasonable conduct by Defendant are wholly conclusory.  (¶¶ 13, 38, 51, 58.)  Therefore, the Court grants this portion of the Motion to Dismiss and dismisses Plaintiffs' claims of statutory unreasonable delay/denial and common law bad faith without prejudice.

## C.   Amount in Controversy

In the FAC, Plaintiffs allege that Mueller estimated that the total value of their Claim was $71,285.77.  (¶ 33.)  In the Notice of Removal, Defendant invoked this Court's diversity jurisdiction on the basis that Plaintiffs state in the District Court Civil

Case Cover Sheet that they seek "more than $100,000 in damages."  (ECF No. 1 at 2.)

Despite Plaintiffs' statements in the documents filed in state court, based on the allegations in the FAC and given that the Court has dismissed Plaintiffs' statutory unreasonable delay/denial and common law bad faith claims, the Court questions whether the amount in controversy remains satisfied.  *See* 28 U.S.C. § 1332 (amount in controversy must exceed $75,000).  Therefore, the Court requires Defendant to show cause why this case should not be remanded to the District Court of Jefferson County due to a failure to satisfy the amount in controversy.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1.      Defendant's Motion to Dismiss (ECF No. 21) is GRANTED IN PART to the extent that Plaintiffs' common law bad faith and statutory unreasonable delay/denial claims are DISMISSED WITHOUT PREJUDICE and is otherwise DENIED; and

2.      No later than **January 6, 2023**, Defendant is ORDERED to SHOW CAUSE as to why this case should not be remanded to the District Court of Jefferson County for failure to satisfy the amount in controversy required under 28 U.S.C. § 1332.


Dated this 28th day of December, 2022.

BY THE COURT:

William J. Martinez
United States District Judge